[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 00-15480

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**JANUARY 09, 2002**
**THOMAS K. KAHN**
**CLERK**

D. C. Docket No. 99-06283-CV-NCR

HECTOR GARCIA,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 9, 2002)**

Before CARNES, BARKETT and KRAVITCH, Circuit Judges.

BARKETT, Circuit Judge:

Hector Garcia, a federal prisoner, appeals the dismissal as untimely of his motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Garcia argues that his motion was timely because he is entitled to retroactive application of the rule announced in Gray v. Maryland, 523 U.S. 185 (1998), which he contends invalidates the district court's admission at his trial of the redacted post-arrest statement of a non-testifying co-defendant. Because of this error, Garcia argues that he is entitled to a new trial. We affirm.

## BACKGROUND

Since the sole issue on appeal is the timeliness of Garcia's motion to vacate, we provide only a brief statement of the relevant facts and procedural history. Along with two co-defendants, Garcia was indicted for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Garcia moved to sever his trial, alleging that he was directly implicated in a post-arrest statement by one of his co-defendants, Reynaldo Chavez. The court refrained from ruling on the motion for severance until the time of trial, at which point the government proposed to redact the name "Garcia" from Chavez's statement.[1] The district court

---

[1]The defendants were arrested after customs agents observed them hauling a large utility spool of aluminum cable from a warehouse. The agents had earlier discovered that cocaine had

2

admitted the statement at trial, as redacted, over Garcia's objection.  Neither Garcia

nor Chavez testified.  Garcia was convicted on both counts; his co-defendants were

acquitted.  He moved for a new trial on several grounds, including the court's

admission of Chavez's statement.  The motion was denied, and Garcia was

sentenced to 400 months' imprisonment on both counts, to run concurrently.[2]

Garcia appealed his conviction and sentence, again arguing that under

Bruton v. United States, 391 U.S. 123 (1968), the district court erred in admitting

the post-arrest statement of a non-testifying co-defendant.  We affirmed the

conviction and sentence in an unpublished opinion on November 14, 1995.  United

States v. Garcia, 71 F.3d 881 (11th Cir. 1995) (Table).  Garcia did not seek en banc

review in this Court nor did he petition for a writ of certiorari from the Supreme

Court, and his conviction became final.

On March 9, 1998, the Supreme Court decided Gray v. Maryland, 523 U.S.

185 (1998), which, applying Bruton, held that the redaction of the defendant's

name from the co-defendant's statement by substituting a blank space or the word

"deleted" did not adequately protect a defendant's Sixth Amendment right to cross-

---

been secreted inside the spool, and therefore they had placed the warehouse under surveillance.
Chavez's post-arrest statement indicated that Garcia told him there was cocaine in the spool.
The government proposed to have the agent testify only that Chavez "learned" the spool
contained cocaine, without revealing the source of that knowledge.

[2]The sentence was subsequently reduced to 293 months' imprisonment as a result of an
amendment to the sentencing guidelines.

examine witnesses. Just under one year later, on March 5, 1999, Garcia filed his motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. He argued that the district court's admission of Chavez's post-arrest statement violated the rule announced in Gray. In response, the government argued that Garcia's motion was untimely under the one-year statute of limitations of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2255(1)-(4). Garcia replied that Gray should be retroactively applied, in which case his motion was timely under § 2255(3), because it was filed within one year of the decision in Gray.

The magistrate judge issued a report and recommendation suggesting that Garcia's motion be denied as untimely. The magistrate found that Gray, neither by its own terms nor under the analysis in Teague v. Lane, 489 U.S. 288 (1989), was to be made retroactively applicable to cases on collateral review. The report thus concluded that Gray did not fall within either of Teague's two exceptions to non-retroactivity. The district court adopted the magistrate's report and dismissed Garcia's motion as untimely. We granted a certificate of appealability on whether the motion was timely filed even though neither the Supreme Court nor the Eleventh Circuit has made the rule announced in Gray retroactively applicable to cases on collateral review.

## STANDARD OF REVIEW

On appeal, we review a district court's findings of fact in a 28 U.S.C. § 2255 proceeding for clear error, and its legal conclusions de novo. Martin v. United States, 81 F.3d 1083, 1084 (11th Cir. 1996).

## DISCUSSION

The AEDPA amended 28 U.S.C. § 2255 to impose a one-year "period of limitation" for filing a motion to vacate, set aside or correct a sentence. The limitation period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. Garcia argues that his motion was timely under § 2255(3) because he contends that Gray announced a new right that is retroactively applicable to cases on collateral review.

In order for Garcia to prevail on his timeliness claim, we must find: (1) that Gray created a newly recognized right; (2) that § 2255(3) does not require the retroactivity determination to be made by the Supreme Court; (3) that the retroactivity determination can be made in this case by this Court; and (4) that Gray is retroactively applicable to cases on collateral review. In this case, the parties have agreed that Gray created a "newly recognized" right, and we are willing to assume for the purposes of argument that it did.[3] We will also assume that § 2255(3) does not require the retroactivity determination to be made by the Supreme Court.[4] Finally, we will assume that § 2255(3) can be satisfied if we

---

[3]As the government points out, the magistrate judge stated that he was not convinced that Gray announced a new rule for the purposes of § 2255(3), but that he need not decide the question because the rule "was not—and should not be—made retroactively applicable to cases on collateral review." Report and Recommendation at 6 n.2. Nevertheless, the government states: "For the purposes of this appeal we adhere to our concurrence in the district court with Garcia's contention that Gray recognized a new rule of procedure within the meaning of the first prong" of § 2255(3). Appellee's Br. at 12.

[4]Although § 2255(3) makes clear that the right must be "newly recognized by the Supreme Court," it is silent as to who must make the retroactivity determination. However, we are aware of only one court of appeals decision ever to hold that § 2255(3) requires the retroactivity decision to be made by the Supreme Court, Montenegro v. United States, 248 F.3d 585, 593-94 (7th Cir. 2001), and that holding was overruled by Ashley v. United States, 266 F.3d 671, 675 (7th Cir. 2001). A Fourth Circuit case stated in a footnote interpreting § 2255(3) that "since the Supreme Court has not yet ruled on the collateral availability of the rule . . . the limitations period has not yet begun to run," but the case involved a second or successive petition, which explicitly requires the retroactivity determination to be made by the Supreme Court. In re Vial, 115 F.3d 1192, 1197 n.9 (4th Cir. 1997) (en banc). (The relevant portion of § 2255 states that a court of appeals may authorize a second or successive application if it would rest on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." (emphasis added).) Focusing on the difference in § 2255's language as it applies to initial petitions and to second or successive petitions, the Fifth Circuit in United States v. Lopez held that the retroactivity determination need not be made

6

make the retroactivity determination in this case.[5]  Even if we make these three

assumptions, however, Garcia cannot prevail, because we do not believe that,

under the principles announced in Teague, Gray should be applied retroactively to

cases on collateral review.

by the Supreme Court because "the structure of the statute does not lend itself to such an interpretation."  248 F.3d 427, 431 (5th Cir. 2001); see also Ashley, 266 F.3d at 673-74 (offering additional reasons why the retroactivity decision need not be made by the Supreme Court).  The same difference in statutory language exists in the comparable provisions for state prisoners. Compare 28 U.S.C. § 2244 (d)(1)(C) with (b)(2)(A).

[5]In other words, we will assume that the phrase "made retroactively applicable to cases on collateral review" does not mean that the Supreme Court or this Circuit must have previously determined the retroactivity of the right before a petitioner is entitled to file a motion pursuant to § 2255(3).  Because it often takes more than a year for a court of appeals (or the Supreme Court) to decide the retroactive applicability of a newly recognized right, this issue is necessarily intertwined with another: whether the one-year limitation period begins to run on the date on which the right is initially recognized by the Supreme Court, or the date on which it is held retroactively applicable by the court of appeals or the Supreme Court.  There is a split among the circuits on how these questions should be answered.  Compare Ashley 266 F.3d at 673 (finding that the limitation period begins to run with the retroactivity determination by the court of appeals or the Supreme Court); United States v. Valdez, 195 F.3d 544, 548 (9th Cir. 1999) (same); United States v. Lloyd, 188 F.3d 184, 188 (3d Cir. 1999) (same); In re Vial, 115 F.3d 1192, 1197 n.9 (4th Cir. 1997) (en banc) (same), with United States v. Lopez, 248 F.3d 427, 433 (5th Cir. 2001) (finding that the limitations period begins to run when the Supreme Court first recognizes the right); Triestman v. United States, 124 F.3d 361, 371 n.13 (2d Cir. 1997) (same). It might present a problem to conclude both that the limitation period begins to run when the Supreme Court initially recognizes the right and that a petitioner may not rely on that right until there is controlling circuit authority holding the right retroactively applicable to cases on collateral review, because in that case the opportunity for review offered by § 2255(3) would largely evaporate: as previously noted, it often happens that more than a year elapses before a right newly recognized by the Supreme Court is held to be retroactively applicable by an appellate court.  In light of the circuit split and the absence of controlling authority in this Circuit, prudent petitioners will treat the earlier date—the date on which the right is newly recognized by the Supreme Court—as the date on which the one-year limitation period begins to run.

Before undertaking the Teague analysis, it will be helpful to summarize Gray's relationship to prior Supreme Court cases. Gray further shaped a landscape that had already been formed by Bruton v. United States, 391 U.S. 123 (1968), and Richardson v. Marsh, 481 U.S. 200 (1987). In Bruton, the Supreme Court held that post-arrest statements made by non-testifying co-defendants that facially incriminate a defendant are inadmissible because such statements violate the defendant's Sixth Amendment right to cross-examine adverse witnesses. The Supreme Court stated that "where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial," a limiting instruction given by the trial court cannot eliminate the possibility of significant prejudicial effect. Bruton, 391 U.S. at 135-36. However, in Richardson, the Supreme Court considered the confession of a non-testifying co-defendant, admitted during a joint trial, that had been redacted to omit the names of all co-defendants. The Court refused to apply Bruton, holding that "the Confrontation Clause is not violated by the admission of a nontestifying co-defendant's confession with the proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." Richardson, 481 U.S. at 211. In such a situation, the confession is not so "powerfully incriminating" that

8

a limiting instruction given by the district court could not effectively eliminate any prejudicial effect. Id. at 208. The Richardson Court expressly stated that it "express[ed] no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." Id. at 211 n.5. That was the issue later presented in Gray.

In Gray, a confession written by a co-defendant that explicitly referred to the defendant was edited so that the defendant's name was replaced by the word "deleted" or a blank space. 523 U.S. at 188. When the government's law enforcement witness read the confession to the jury, he said "deleted" wherever a blank space appeared. Then, immediately after reading the confession, the witness informed the jury that he arrested the defendant after taking the co-defendant's statement. The Supreme Court held that admission of such an "obviously redacted confession" violated Bruton because it "point[ed] directly to the defendant." Id. at 194. Thus, unlike Richardson, where the redacted statement "became incriminating 'only when linked with evidence introduced later at trial,'" id. at 196 (quoting Richardson, 481 U.S. at 208), the redacted confession in Gray "facially incriminat[ed]" the defendant and "involve[d] inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." Id. Moreover, the prosecutor "blatantly link[ed] the defendant to the deleted

9

name" by highlighting the connection between the confession and the defendant's arrest. Id. at 193.

With this background in mind, we now turn to our analysis of Teague. Teague holds that new rules of constitutional law are not to be applied retroactively to cases on collateral review unless they fall within one of two exceptions. 489 U.S. at 311-13. First, the rule must place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or second, it must "require[] the observance of 'those procedures that . . . are "implicit in the concept of ordered liberty.""" Id. at 311 (citations omitted). Garcia concedes that the first exception does not apply to his case, but argues that the right recognized in Gray satisfies the second exception.

We have previously stated that "[t]o fall within the [second] exception, the new rule must satisfy a two-pronged test: (1) it must relate to the accuracy of the conviction; and (2) it must alter 'our understanding of the "bedrock procedural elements" essential to the [fundamental] fairness of a proceeding.'" Nutter v. White, 39 F.3d 1154, 1157 (11th Cir. 1994) (quoting Sawyer v. Smith, 497 U.S. 227, 242 (1990)). In Nutter, for example, we held retroactively applicable the rule of Cage v. Louisiana, 498 U.S. 39 (1990) (per curiam), which found that a jury instruction that used the phrases "grave uncertainty," "substantial doubt," and

10

"moral certainty" to define reasonable doubt violated due process because it allowed the jury to convict on a lower standard of proof than beyond a reasonable doubt. We noted, first, that the Cage rule met the accuracy prong because "[t]he reasonable doubt standard guards against conviction of the innocent by ensuring the systemic accuracy of the criminal system." 39 F.3d at 1157 (emphasis in original). And second, we observed that the fundamental fairness prong was satisfied because "use of a lower standard of proof frustrates the jury-trial guarantee" and because "an inadequate reasonable doubt instruction cannot be cured by other circumstances at trial" and therefore "undermines the fundamental fairness of every trial in which it is used." Id. at 1158 (emphasis in original).

Garcia contends that the Confrontation Clause rights implicated in Gray are implicit to the concept of ordered liberty and fundamental fairness, and that a violation of the Confrontation Clause can have a profound effect on the accuracy of a verdict. We are inclined to agree that Gray satisfies the accuracy prong of Teague's second exception. As Garcia points out, cross-examination has long been recognized as a vehicle for truth in an adversary proceeding. See, e.g., Davis v. Alaska, 415 U.S. 308, 316 (1974). "[T]he Confrontation Clause is designed, through the vehicle of cross-examination, 'to promote reliability in the truth-finding functions of a criminal trial.'" Duren v. Hopper, 161 F.3d 655, 666

11

(11th Cir. 1998) (quoting <u>Kentucky v. Stincer</u>, 482 U.S. 730, 737 (1987)).  In

<u>Gray</u>, the Supreme Court reiterated <u>Bruton</u>'s admonition that in some contexts the

practical and human limitations of the jury system cannot be ignored.

> Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.  Not only are the incriminations devastating to the defendant but <u>their credibility is inevitably suspect</u> . . . .  <u>The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination.</u>

<u>Gray</u>, 523 U.S. at 190 (quoting <u>Bruton</u>, 391 U.S. at 135-36) (emphasis added).  The

Court's concern with the threat to reliability leads us to conclude that the accuracy

prong is satisfied here.

However, we do not believe that <u>Gray</u> meets the fundamental fairness prong

of <u>Teague</u>'s second exception.  This is because the Supreme Court has indicated

that the rule must "'alter our understanding of the bedrock procedural elements'

essential to the fairness of a proceeding."  <u>Sawyer v. Smith</u>, 497 U.S. 227, 242

(1990) (quoting <u>Teague</u>, 489 U.S. at 311).  <u>Gray</u> was an application of <u>Bruton</u>'s

principles, protecting the same interests.  Thus, we cannot agree that <u>Gray</u> fits

within a narrow exception that the Supreme Court has stated must "alter our

understanding of the bedrock procedural elements essential to the fairness of a

proceeding."  <u>Id.</u>

12

**CONCLUSION**

For the foregoing reasons, we find that the right recognized in <u>Gray</u> is not retroactively applicable. Therefore, it cannot serve as the basis for a motion pursuant to § 2255(3). Accordingly, the judgment of the district court is **AFFIRMED**.