[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 02-16134

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 16, 2004
THOMAS  K. KAHN
CLERK

D. C. Docket Nos. 01-01347-CV-FAM
and 93-00304 CR-FAM

MICHAEL DONALD DODD,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 16, 2004)**

Before TJOFLAT and MARCUS, Circuit Judges, and MUSGRAVE[*], Judge.

MARCUS, Circuit Judge:

_____

[*]Honorable R. Kenton Musgrave, Judge, United States Court of International Trade,
sitting by designation.

Michael Donald Dodd, a federal prisoner, appeals the dismissal of his petition to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Dodd claims that his conviction violated both the Sixth Amendment and the Due Process Clause because the district court failed to charge the jury that in order to find him guilty of engaging in a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848, it had to find him guilty of each constituent violation by a unanimous vote. The district court dismissed Dodd's petition after adopting a Report and Recommendation from a magistrate judge which concluded that Dodd had failed to file his § 2255 application within the one-year statute of limitations applicable to such motions under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2255(1)-(4). After thorough review of the record and the parties' briefs, we find no reversible error and affirm.

I.

The factual background of this case is relatively straightforward, and we offer only the following brief summary of the relevant facts and procedural history. On June 25, 1993, a grand jury sitting in the United States District Court for the Southern District of Florida charged Dodd by superseding indictment with knowingly and intentionally engaging in a CCE, in violation of 21 U.S.C. §§ 841

2

and 846 ("Count I"); conspiring to possess with intent to distribute marijuana (as part of Count I's CCE), in violation of 21 U.S.C. § 841(a)(1) ("Count II"); conspiring to possess with intent to distribute cocaine (as part of Count I's CCE), in violation of 21 U.S.C. § 841(a)(1) ("Count III"); and sixteen counts of using and possessing a passport obtained by false statement, in violation of 18 U.S.C. § 1546(a) ("Counts IV-XIX"), arising out of his leadership role in the "Spangler Posse," a large Jamaican drug distribution network based in New York City, from the 1970's through at least the 1980's.

After trial by jury, Dodd was found guilty as to all counts except for Count III. The district court imposed a 360-month term of imprisonment, followed by five years of supervised release. On May 7, 1997, we affirmed his conviction on direct appeal. See United States v. Dodd, 111 F.3d 867 (11th Cir. 1997) (per curiam). Dodd did not petition the Supreme Court for certiorari, and his conviction became final on August 6, 1997, when the time for filing a petition for certiorari expired.[1]

---

[1]This Court has held that when a prisoner does not file a petition for certiorari, "within the meaning of § 2255 . . . the judgment becomes final on the date on which the defendant's time for filing such a petition expires." Kaufmann v. United States, 282 F.3d 1336, 1339 (11th Cir.) (internal quotation marks omitted), cert. denied, 537 U.S. 875, 123 S. Ct. 287, 154 L. Ed. 2d 127 (2002). Similarly, the Supreme Court has indicated that convictions become final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321 n.6, 107 S. Ct. 708, 712 n.6, 93 L. Ed. 2d 649 (1986). The period in which a petition for certiorari

3

On April 4, 2001, more than three years later, Dodd filed this § 2255 petition, arguing that his Sixth Amendment and due process rights were violated because the jury in his underlying criminal case was not instructed that to find him guilty of the CCE count, it had to find him guilty of each constituent violation by a unanimous vote. Dodd based his argument on the Supreme Court's June 1, 1999, decision in <u>Richardson v. United States</u>, 526 U.S. 813, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999) (holding that to find a defendant guilty on a CCE count, a jury must find the defendant guilty by a unanimous vote of each of the constituent violations of the CCE).

In its response to Dodd's petition, the government argued that Dodd's motion was time-barred, because it had been filed well beyond AEDPA's one-year limitations period.[2] While the government conceded that the date the

_____

must be filed ordinarily ends ninety (90) days after the entry of judgment. Sup. Ct. R. 13. In this case, Dodd did not file a petition for certiorari, and his conviction became final 91 days after this Court affirmed his conviction on May 7, 1997.

[2]AEDPA provides, at 28 U.S.C. § 2255, paragraph 6:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from . . .
>
> . . . .
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]

4

statute of limitations begins to run for a Richardson claim is unsettled in this Circuit, it urges us to hold that AEDPA's one-year statute of limitations period began to run on June 1, 1999, the day the Supreme Court decided Richardson. Under these circumstances, Dodd's petition -- filed almost two years later -- plainly would be untimely unless the statute of limitations were somehow tolled.

Dodd responds that the one-year statute of limitations period for Richardson claims did not begin to run until April 19, 2002, when this Court made Richardson retroactively applicable to cases on collateral review in Ross v. United States, 289 F.3d 677 (11th Cir. 2002), cert. denied, 537 U.S. 1113, 123 S. Ct. 944, 154 L. Ed. 2d 787 (2003). If we adopt this date as the trigger for the statute of limitations, then any motion filed prior to April 19, 2003 -- including Dodd's -- would be timely.

In the alternative, Dodd says that even if the limitations period began to run immediately after Richardson was decided, it should be equitably tolled from October 25, 1999, to September 11, 2000, during which time he was in custody of the U.S. Marshal, did not have access to his legal papers, and was impeded from filing his motion. On October 25, 1999, Dodd was transported from the federal correctional facility in Talladega, Alabama, where he maintained his legal papers, to the federal detention center in Miami, Florida, pursuant to a writ of habeas

5

corpus ad testificandum issued by the United States Attorney for the Southern District of Florida. During his time in Miami, Dodd's papers remained in Talladega. He was returned to Talladega on September 11, 2000.

Dodd filed his § 2255 motion approximately seven months later, on April 4, 2001. Subsequently, on October 18, 2001, the magistrate judge issued a Report and Recommendation concluding that Dodd's motion should be dismissed because (1) the motion was filed more than one year after the Supreme Court's decision in <u>Richardson</u>, and was thus time-barred, and (2) Dodd failed to demonstrate that the circumstances surrounding his late filing were extraordinary or could not have been overcome with due diligence. The district court adopted the magistrate judge's Report and Recommendation on October 31, 2001, and dismissed Dodd's motion as time-barred.

The district court granted Dodd a Certificate of Appealability on the issue of whether the limitations period should have been equitably tolled. This Court subsequently expanded the Certificate of Appealability to include the following issue:

> [F]or purposes of a newly recognized right, pursuant to 28 U.S.C. § 2255(3), does the one-year statute of limitations begin to run on the date the Supreme Court initially recognized the right, or does it begin on the date a court first held that the right is recognized retroactively on collateral review?

6

This question -- regarding the date from whence the one-year limitations period of 28 U.S.C. § 2255(3) begins to run -- has generated a split among our sister Circuits. Compare United States v. Lopez, 248 F.3d 427, 432-33 (5th Cir. 2001) (concluding that limitations period begins to run on the date Supreme Court initially recognizes new right), Nelson v. United States, 184 F.3d 953, 954 (8th Cir. 1999) (same), Triestman v. United States, 124 F.3d 361, 371 n.13 (2d Cir. 1997) (stating same in dicta) and Donaldson v. United States, Nos. 01-CV-1061(NPM) & 92-CR-51-001, 2002 WL 1839213 at *4 (N.D.N.Y. Aug. 6, 2002) (following Triestman) with Ashley v. United States, 266 F.3d 671, 673-74 (7th Cir. 2001) (concluding that the limitations period begins to run on the date when the new right is declared to be retroactively applicable on collateral review), United States v. Valdez, 195 F.3d 544, 547-48 (9th Cir. 1999), United States v. Lloyd, 188 F.3d 184, 187-88 (3d Cir. 1999) (assuming that limitations period begins to run only after either Supreme Court's own retroactivity decision or decision by Court of Appeals declaring right retroactively available on collateral review within the relevant circuit), and Berthoff v. United States, 140 F. Supp. 2d 50, 59-60 (D. Mass. 2001) ("[T]his Court . . . believes the better interpretation of section 2255(3) is that the new limitations period should run from the date on

7

which either the Supreme Court or the controlling circuit court holds the new right to be retroactive on collateral review.").

After thoroughly reviewing the record and the briefs, as well as the conflicting case law as to when the limitations period in § 2255(3) begins running, we affirm the dismissal of Dodd's § 2255 motion. In doing so, we join those circuits which have concluded that the limitations period in § 2255(3) is triggered on the date the Supreme Court initially recognizes a new right. We further hold that Dodd has failed to present sufficient evidence to support the application of the doctrine of equitable tolling, an "extraordinary remedy" which we apply only "sparingly." Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000)

II.

This Court reviews de novo a district court's determination "that a petition for federal habeas corpus relief was time-barred," Bridges v. Johnson, 284 F.3d 1201, 1202 (11th Cir. 2002), as we review all issues concerning statutory interpretation. Kaufmann, 282 F.3d at 1337; see also United States. v. Hooshmand, 931 F.2d 725, 737 (11th Cir. 1991). Likewise, we review de novo a "district court's determination that equitable tolling is inapplicable . . . ." Steed, 219 F.3d at 1300. However, a district court's determinations of the facts relevant to a petitioner's equitable tolling claim "will be reversed only if clearly erroneous.

8

. . . This standard requires us to affirm a district court's findings of fact unless 'the record lacks substantial evidence' to support that determination." Drew v. Dep't of Corr., 297 F.3d 1278, 1283 (11th Cir. 2002) (citing Dorsey v. Chapman, 262 F.3d 1181, 1185 (11th Cir. 2001) and quoting Lightning v. Roadway Express, Inc., 60 F.3d 1551, 1558 (11th Cir. 1995)), cert. denied, 537 U.S. 1237, 123 S. Ct. 164, 155 L. Ed. 2d 205 (2003).   "We have squarely held that a determination regarding a party's diligence is a finding of fact that 'will not be disturbed unless clearly erroneous.'" Id. (quoting Walters v. City of Atlanta, 803 F.2d 1135, 1145 (11th Cir. 1986)).

## III.

We address, first, whether the district court erred in determining that, for the purposes of a newly recognized right, pursuant to 28 U.S.C. § 2255(3), AEDPA's one-year statute of limitations begins to run on the date when the Supreme Court initially recognizes the right.

Subsection (3) of § 2255 provides that the statute's one-year period of limitation shall run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" 28 U.S.C. § 2255(3).

We have recognized, as have the other circuits, that <u>Richardson</u> established a newly created right within the meaning of § 2255(3). <u>See</u> <u>Ross</u>, 289 F.3d at 681; <u>see</u> <u>also</u> <u>Santana-Madera v. United States</u>, 260 F.3d 133, 139 (2d Cir. 2001); <u>Lopez</u>, 248 F.3d at 432; <u>Murr v. United States</u>, 200 F.3d 895, 906 (6th Cir. 2000). Indeed, the government has expressly conceded this point. Appellees' Brief at 6 ("Dodd is correct in his assertion that the Supreme Court recognized a new right in <u>Richardson</u>.").

There is likewise no doubt that the new right announced in <u>Richardson</u> is retroactively available on collateral review. <u>See</u> <u>Ross</u>, 289 F.3d at 681 (11th Cir. 2002). Neither party contends that § 2255(3) requires that the retroactivity decision be made by the Supreme Court; rather, any court may do so. As a panel of this Court noted, every circuit to consider this issue has held that a court other than the Supreme Court can make the retroactivity decision for purposes of § 2255(3). <u>Garcia v. United States</u>, 278 F.3d 1210, 1213 n.4 (11th Cir.) (citing <u>Lopez</u>, 248 F.3d at 431; <u>Ashley</u>, 266 F.3d at 673-74), <u>cert. denied</u>, 537 U.S. 895, 123 S. Ct. 180, 154 L. Ed. 2d 163 (2002);[3] <u>see</u> <u>also</u> <u>United States v. Swinton</u>, 333

---

[3]In <u>Garcia</u>, a panel of this Court recognized but did not decide the issue of when the § 2255(3) limitations period begins to run. <u>See</u> 278 F.3d at 1213 n.5. In that case, we identified the question as "whether the one-year limitation period begins to run on the date on which the right is initially recognized by the Supreme Court, or the date on which it is held retroactively applicable by the court of appeals or the Supreme Court[,]" and observed that:

10

F.3d 481, 487 (3d Cir.) ("We conclude -- and the parties agree -- that the statute

of limitations provision of § 2255 allows district courts and courts of appeals to

make retroactivity decisions."), <u>cert. denied</u>, 124 S. Ct. 458, 157 L. Ed. 2d 330

(2003).[4]

While Dodd's motion meets the substantive requirements of § 2255(3) -- it

is based on a new right identified by the Supreme Court in <u>Richardson</u> made

retroactively applicable to cases on collateral review -- the critical question

---

[t]here is a split among the circuits on how these questions should be answered. . . . It might present a problem to conclude <u>both</u> that the limitation begins to run when the Supreme Court initially recognizes the right <u>and</u> that a petitioner may not rely on that right until there is controlling circuit authority holding the right retroactively applicable to cases on collateral review, because in that case the opportunity for review offered by § 2255(3) would largely evaporate: as previously noted, it often happens that more than a year elapses before a right newly recognized by the Supreme Court is held to be retroactively applicable by an appellate court. In light of the circuit split and the absence of controlling authority in this Circuit, prudent petitioners will treat the earlier date -- the date on which the right is newly recognized by the Supreme Court -- as the date on which the one-year limitation period begins to run.

278 F.3d at 1213 n.5.

[4] The Fourth Circuit interpreted § 2255 in a case involving a second or successive habeas petition, noting in a footnote that "since the Supreme Court has not yet ruled on the collateral availability of the rule . . . the limitations period has not yet begun to run," <u>In re Vial</u>, 115 F.3d 1192, 1197 n.9 (4th Cir. 1997) (<u>en banc</u>). As we noted in <u>Garcia</u>, however, that case involved a second or successive petition, rather than an initial petition, as in the instant case. See <u>Garcia</u>, 278 F.3d 1210, 1213 n.4. The section of law pertinent to second or successive petitions explicitly requires the retroactivity determination to be made by the Supreme Court, stating that a court of appeals may authorize a second or successive application if it would rest on "a new rule of constitutional law, <u>made retroactive to cases on collateral review by the Supreme Court</u>, that was previously unavailable." 28 U.S.C. § 2255 ¶ 8 (2) (emphasis added).

11

remains whether his motion is timely. To state the issue in more specific terms, since Dodd filed his motion on April 4, 2001, it would not be timely if the one-year limitations period in § 2255(3) began to run on June 1, 1999, when the Supreme Court first recognized the new right by deciding Richardson. If, however, the statute of limitations did not begin to run until April 19, 2002, when this Court held in Ross that the newly created Richardson right was retroactively available on collateral review, then Dodd's motion was timely filed well before the limitations period ended on April 19, 2003.

We begin with the plain language of the statute in question. See Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) (en banc) (noting that "courts should always begin the process of legislative interpretation, and . . . often should end it as well, . . . with the words of the statutory provision."). Here, as the Second Circuit noted, "the statute provides that the limitations period begins to run on 'the date on which the right asserted was initially recognized by the Supreme Court,' 28 U.S.C. § 2255 (emphasis added), which may be different from the date on which the right is later made retroactively available to cases on collateral review." Triestman, 124 F.3d at 371 n. 13. There is no reason to read the unambiguous term "initially" as signifying anything other than its common-sense and ordinary meaning of "from the beginning." See Webster's Third New

12

International Dictionary 1164 (1961) (defining "initially" to mean "in the first place" and "at the beginning"). See also In re Griffith, 206 F.3d 1389, 1393 (11th Cir. 2000) (en banc) ("In interpreting the language of a statute, we generally give the words used their ordinary meaning." (internal quotation marks and citations omitted)).

If the one-year limitation period runs only from the date on which the Supreme Court initially recognized the new right, we must determine the purpose of the qualifying clause that follows: "if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(3). It would not be logical for Congress to have enacted a strict one-year time limitation and then qualified that time frame by reference to ambiguous events. Rather, we believe Congress was simply reiterating the obvious: that § 2255(3) provides a narrow exception which can be relied upon only when the new right recognized by the Supreme Court can be retroactively applied on collateral review. Thus, the second clause in § 2255(3) qualifies the right asserted -- not the time limit.[5]

---

[5]As the Fifth Circuit noted, "[t]he portion of § 2255(3) that triggers [the] limitations period contains the phrase 'right asserted.' Subsequently, 'that right' is limited by the retroactivity requirement. Therefore the retroactivity on collateral review aspect is not contained within the term 'right[,]'" Lopez, 248 F.3d at 433 (emphasis added), but rather qualifies and limits it.

Put simply, if Congress intended the limitations period to begin running when a right was made retroactive, it could easily have said the limitation period shall run from the date on which a right newly recognized by the Supreme Court has been made retroactively applicable on collateral review. Instead, Congress has written that "[t]he limitation period shall run from . . . the date on which the right asserted was <u>initially</u> recognized by the Supreme Court . . . ." 28 U.S.C. § 2255(3) (emphasis added). There is no reason to believe that Congress intended this unequivocal phrase to mean anything other than what it says. <u>See</u> <u>United States v. Steele</u>, 147 F.3d 1316, 1318 (11th Cir. 1998) (<u>en banc</u>) ("[W]e must presume that Congress said what it meant and meant what it said." (citing <u>Connecticut Nat'l Bank v. Germain</u>, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992))).

We turn then to the problem that a panel of this Court recognized in <u>Garcia</u>: that the opportunity for review presented by § 2255(3) would disappear if, at the same time we concluded that the limitation period begins to run when the Supreme Court initially recognizes the right, we also determined that a petitioner could not rely on that right until there is controlling circuit authority holding the right retroactively available. <u>Garcia</u>, 278 F.3d at 1213 n.5; <u>see also</u> <u>Ashley</u>, 266 F.3d at 673-74 (under such an interpretation, § 2255(3) would be a

14

"mirage," given that more than a year can elapse between Supreme Court decision and retroactivity ruling). While our holding today embraces the former proposition, we explicitly reject the latter.

Implicit in the conclusion that <u>any</u> court may make the retroactivity decision is the necessary inference that a petitioner <u>need</u> <u>not</u> wait for a controlling decision before filing his petition. Because a petitioner need not wait for the Supreme Court to address the issue of retroactivity, he may assert a claim in a district court as soon as a new right is recognized by the Supreme Court -- in the hope, of course, that the district court will find the new right retroactively available on collateral review. <u>See</u> <u>Swinton</u>, 333 F.3d at 487 ("the statute of limitations provision of § 2255 allows district courts and courts of appeals to make retroactivity decisions."). Under this interpretation, therefore, a petitioner may file a § 2255(3) motion <u>immediately</u> after the Supreme Court decision announcing the right upon which the motion is based.

As a result, our analysis favors petitioners hoping to benefit from new rules announced by the Supreme Court. In cases based on <u>Richardson</u> rights, under our analysis, a petitioner could have filed a § 2255(3) motion immediately after the decision, or as early as June 2, 1999. Under the interpretation urged by Dodd, however, where the limitations period is not triggered until the right is made

15

retroactively applicable, petitioners in this Circuit would have had to wait to file until this Court decided Ross in April 2002, meaning that prisoners would have to sit on their rights for almost three years.  And in other circuits, where even more time elapsed before a decision on retroactivity was made, the wait could be even longer.  Finally, if all petitioners faithfully awaited a retroactivity decision before asserting their rights -- a situation theoretically possible if not practically imaginable -- the Supreme Court and the circuits might never have occasion to make a retroactivity decision and the one-year window for filing a § 2255(3) motion might never open.

Moreover, Dodd's argument loses much of its force when we observe that in his own case he did not stand idly by for the three years before Ross was decided: indeed, Dodd filed his motion more than a year before that decision.  Here, Dodd's actions speak louder than his words, and suggest that, at bottom, his argument really is that a petitioner may file a § 2255(3) motion beginning immediately after the Supreme Court announces a new right, and at any time up until one year after the first retroactivity decision is handed down.  For motions relying on Richardson in this Circuit, then, Dodd effectively urges a limitations period of nearly four years, from June 1, 1999, when Richardson was decided, until April 19, 2003, a year after the Ross decision.  This putative four-year

16

period of limitations -- a period which could be significantly longer in many circumstances -- cannot be squared with AEDPA's unambiguous intention to bring certainty to this area of the law, and to give petitioners but a single year in which to file their claims.

Moreover, if we adopted Dodd's analysis and concluded that the limitations period in § 2255(3) did not begin to run until controlling circuit authority held a right retroactively applicable to cases on collateral review, this would yield not only different start dates in different jurisdictions, but also would result in uncertain limitations periods throughout the nation. The limitations period in each federal circuit could have a different start date, depending on when the retroactivity issue was decided there. In different circuits, petitioners would have to sit on their hands for different lengths of time, unable to assert their claims until after a retroactivity decision was made for the one-year window of opportunity to open.[6]

Alternatively, if the period began immediately after the Supreme Court decision and lasted until a year from the first retroactivity decision, each circuit

---

[6] We note further that, even within a single circuit, retroactivity decisions by different district courts would arguably trigger the limitations period at different times, injecting still further uncertainty into the determination of the appropriate limitations period. Moreover, more than a year might often elapse between the time a district court initially found a new right retroactively available on collateral review and the time the circuit court reviewed that decision.

would effectively have a different statute of limitations, many of which could stretch on for years. See Lopez, 248 F.3d at 433 (noting that if the limitations period only begins with the retroactivity decision, multiple situations could arise in which "the limitations period would never be triggered, and any petitioner's out-of-time motion would be timely, a likely unintended consequence by Congress."). So unpredictable and inconsistent a result would neither further the interest of judicial efficiency nor be consonant with the intent of a statute which, on its face, plainly aims to establish a single, uniform statute of limitations.

Because we interpret the limitations period according to its plain language, and consistently with the policy choices underlying AEDPA, we conclude that the one-year window of opportunity in which Dodd could have timely filed a habeas petition asserting the right recognized in Richardson opened on June 1, 1999, when that case was decided, and closed one year later. Since Dodd did not file his § 2255 motion until April 4, 2001 (almost three years later), the district court properly determined that it was time-barred, unless the statute of limitations was equitably tolled.

IV.

We are unpersuaded by Dodd's alternative argument that the district court erred in concluding that he was not entitled to "equitable tolling."[7]

Dodd says that even if we hold that the limitations period embodied in § 2255(3) began to run immediately after the Richardson decision, his motion is still timely because of equitable tolling from October 25, 1999 to September 11, 2000. Dodd explains that 146 days elapsed between the Richardson decision on June 1, 1999, and his transfer from Talladega on October 25, 1999, and that 205 days elapsed between his return to Talladega on September 11, 2000, and the time he filed his motion on April 4, 2001. Thus, Dodd argues, if the statute of limitations were tolled during the time Dodd was away from Talladega, only 351 days (146 + 205 days) would have elapsed from the date of the Richardson decision to Dodd's filing, bringing his motion within the one-year limitations

---

[7] In addition to arguing for equitable tolling, Dodd also suggested in the district court that his motion was timely based on 28 U.S.C. § 2255(2), which provides that the one-year statute of limitations begins after "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed." This issue is beyond the scope of Dodd's Certificate of Appealability ("COA"), and therefore not properly reviewed by this Court. See Murray v. United States, 145 F.3d 1249, 1251 (11th Cir. 1998) ("[W]e hold that in an appeal brought by an unsuccessful habeas petitioner, appellate review is limited to the issues specified in the COA."). Moreover, even if the issue were properly before us, Dodd's contentions would still fail. As a panel of this Court held in Akins v. United States, in order to prevail under § 2255(2), an alleged governmental impediment must be unconstitutional, one that is "not 'reasonably related to legitimate penological interests.'" 204 F.3d 1086, 1090 (11th Cir. 2000) (citation omitted). Dodd does not argue that his time spent in the custody of the U.S. Marshal in Miami was unconstitutional, and thus, this detention cannot support a claim under § 2255(2).

period. See Knight v. Schofield, 292 F.3d 709, 712 (11th Cir. 2002) (explaining that "the clock is stopped while tolling is in effect").

Dodd also says that during the period after his return to Talladega, he spent considerable time trying to obtain documentation, and that the government would not provide him with the necessary material until he filed suit under the Freedom of Information Act, 5 U.S.C. § 552. Dodd seems to suggest, therefore, that his motion was filed as swiftly as was possible under the circumstances. He does not contend, however, that he made any attempt to have his legal papers forwarded to him while he was in Miami.

The government responds that equitable tolling is not applicable here, given the nearly five months Dodd had to file a motion based on Richardson before his transfer to Miami and the seven additional months he spent after his return to Talladega before filing his motion. Thus, the government urges, Dodd has not shown that his untimely filing was due to extraordinary circumstances beyond his control and otherwise unavoidable even with due diligence.

While equitable tolling is an "extraordinary remedy which is typically applied sparingly," Steed, 219 F.3d at 1300, it "can be applied to prevent the application of AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his

20

petition." Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001); see also Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) (holding that the limitations period may be equitably tolled where "a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence" (emphasis added)). "The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner." Drew, 297 F.3d at 1286. To establish diligence, then, the petitioner must present evidence showing reasonable efforts to timely file his action. Id. at 1287-89.

In Akins, a panel of this Court held that equitable tolling was inapplicable for periods of various lockdowns or during a period in which the movant's legal papers were misplaced by the prison. 204 F.3d at 1089-90. It is true that the facts of Akins are distinguishable from the case at hand, as the § 2255 movant there had failed to act for four years prior to the enactment of AEDPA, at least seven months after he obtained a transcript which he deemed necessary to his case, and at least six months after the enactment of AEDPA. Nonetheless, Akins suggests that lockdowns and periods in which a prisoner is separated from his legal papers are not "extraordinary circumstances" in which equitable tolling is appropriate.

21

While Dodd contends that the limitations period in § 2255(3) should have been tolled during the period he was detained in Miami and did not have access to his papers, we cannot discern sufficient evidence in this record to establish that the circumstances were truly extraordinary. Dodd does not suggest, let alone argue that his detention was unconstitutional or somehow inappropriate, or that the transfer of a prisoner from one facility to another is anything but a routine practice.

Nor has Dodd shown that he acted with the diligence required to render equitable tolling appropriate to this case. Following the Richardson decision, Dodd had nearly five additional months with no impediments to stop him from preparing or filing a § 2255 motion. Moreover, Dodd has presented no evidence to show that, while he was in custody in Miami, he made any request to have his papers delivered to him,[8] attempted to contact counsel to assist him with timely

---

[8] On appeal, Dodd's counsel asserts that Dodd was prevented from taking his legal materials with him to Miami "[p]ursuant to a policy of the Federal Bureau of Prisons," thus apparently implying that his failure to exercise diligence in requesting his legal papers should be excused for futility. Appellant's Brief at 24. However, Dodd's counsel does not direct our attention to such a policy, citing only an Inmate Personal Property Record -- an inventory of his property stored at Talladega -- appended as an exhibit to Dodd's Reply to the Government's Response to his § 2255 Motion. Notably, in his Reply, Dodd cites this exhibit only to prove that his files remained in Talladega, not that they were maintained there, against his wishes, pursuant to a particular policy. The unsupported suggestion of futility, without more, is insufficient to defeat the diligence required in this context. Nor would this period excuse the failure to act for the seven months after he was returned to Talladega.

filing his motion, or otherwise undertook any action that would suggest reasonable diligence under the circumstances. Indeed, Dodd has not claimed that he made any specific efforts to file his motion within the established limitations period, either in the five months before he was transferred to Miami or in the seven months after his return to Talladega.

Simply put, Dodd has not shown with any degree of particularity what efforts he made that would even arguably constitute an appropriate degree of diligence for someone in his situation. Nor, finally, has he demonstrated why, if he had acted with the diligence plainly required to trigger the doctrine of equitable tolling, he could not have filed within the one-year period. Quite simply, we cannot conclude that the district court's finding that Dodd failed to demonstrate due diligence was clearly erroneous, and, as a result, Dodd's "lack of diligence bars us from reaching out and granting the rare and extraordinary remedy of equitable tolling." Drew, 297 F.3d at 1290 n.5.

V.

Accordingly, we hold today that, for the purposes of a newly recognized right under 28 U.S.C. § 2255(3), the one-year statute of limitations begins to run on the date the Supreme Court initially recognizes the right. As a result, Dodd's § 2255 motion, filed nearly two years after the Supreme Court initially recognized

23

the new right in <u>Richardson</u>, is barred by the applicable one-year limitations period.  Moreover, Dodd is not entitled to equitable tolling of the limitations period because he has shown neither extraordinary circumstances nor the diligence necessary to toll the statute.  It follows that the district court did not err in dismissing Dodd's § 2255 motion as untimely.

 **AFFIRMED**.