John F. ALLEN, Petitioner,

v.

Gene M. JOHNSON, Respondent.

No. 1:08cv1343 (TSE/TCB).

United States District Court,
E.D. Virginia,
Alexandria Division.

March 11, 2009.

John F. Allen, Dillwyn, VA, pro se.

## MEMORANDUM OPINION
## AND ORDER

T.S. ELLIS, III, District Judge.

John F. Allen, a Virginia inmate proceeding *pro se*, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction of two counts each of abduction and robbery, and one count of each of the following: breaking and entering while armed with a deadly weapon, assault by mob, malicious wounding, wearing a mask in public, and conspiracy to commit breaking and entering while armed with a deadly weapon. By Order dated January 27, 2009, petitioner was informed that the instant petition would be dismissed as time-barred unless he contested the application of the one-year statute of limitations or established that he was entitled to equitable tolling within thirty days. Petitioner also was directed either to pay the $5.00 filing fee, or to submit an application to proceed *in forma pauperis*. Petitioner complied with this Order, submitting the filing fee and an Affidavit. Petitioner also submitted a request to proceed in *forma pauperis* on February 18, 2009.

As explained in the January 27, 2009 Order, the applicable statute of limitations, 28 U.S.C. § 2244(d), bars the claims presented. A petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D).

In the instant case, petitioner was sentenced on May 12, 2006, in the Circuit Court for the County of King George, Virginia after entering a plea of guilty. *Commonwealth v. Allen*, No. CR05000010–12, 20–21, 23–25, 30 (Va.Cir.Ct. May 12, 2006). Petitioner did not file a direct appeal, therefore his conviction became final thirty days after his sentence was imposed, on

June 11, 2006.[1] In calculating the one-year period, however, the time during which state collateral proceedings pursued by petitioner were pending must be excluded. *See* 28 U.S.C. § 2244(d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). On August 15, 2006, petitioner filed a state habeas petition in the Circuit Court for the County of King George, which denied his petition on February 22, 2007. *Allen v. Higgs*, No. CL06000157 (Va.Cir.Ct. Feb. 22, 2007). Petitioner then appealed to the Supreme Court of Virginia, which denied the appeal on December 13, 2007. *Allen v. Dir. Dep't of Corr.*, No. 070973 (Va. Dec.

13, 2007). Although the record does not disclose the exact date of filing, it seems clear that the earliest date on which petitioner could have filed the instant petition was December 12, 2008, the date on which the petition was notarized.[2]

Between June 11, 2006, the date petitioner's conviction became final, and August 15, 2006, the date petitioner filed his state habeas petition, 65 days passed. Between December 13, 2007, the date the denial of petitioner's state habeas petition became final, and December 12, 2008, the date petitioner filed his federal petition, an additional 365 days passed. When these days are combined they establish that the instant petition was filed 65 days beyond the one-year limit. Accordingly, the petition is untimely under § 2244(d), unless

---

1. In his petition, petitioner stated that he filed two motions regarding his guilty plea, a Motion to Reconsider to Correct Manifest Injustice and a Motion to Withdraw his plea, and he indicated that both motions were filed prior to his sentencing. Pet. 5. In his recent Affidavit, petitioner claims he was mistaken, and that these Motions were filed *after* his sentencing but within the twenty-one day period within which the circuit court retains jurisdiction following the imposition of a sentence. *See* Va.Code Ann. § 19.2–296 (permitting a defendant to file a motion to correct manifest injustice within twenty-one days after entry of a final order). This correction does not rescue the petition from untimeliness. In Virginia, a criminal conviction is final upon entry of the sentencing order. *See Batts v. Commonwealth*, 30 Va.App. 1, 12, 515 S.E.2d 307, 313 (1999). Thus, it appears that the proper starting point for purposes of calculating the timeliness of this petition would be the date of sentencing, May 12, 2006. Moreover, even if the one-year period commenced from the date of the entry of the Order denying petitioner's Motions, the instant petition would still be untimely. Petitioner's motions were denied on June 2, 2006, and because he failed to appeal, his conviction would have become final thirty days later on July 2, 2006, which would render the instant petition untimely by forty-four days.

2. For purposes of calculating the statute of limitations, a petition is deemed filed when the prisoner delivers his pleading to prison officials. *Lewis v. City of Richmond Police Dep't*, 947 F.2d 733 (4th Cir.1991): *see also Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). In his petition, petitioner avers that he placed his petition in the prison mail system at some point in December 2008. Although petitioner does not specify the date he actually placed his petition in the prison mail system, it appears the petition was not notarized until December 12, 2008. Even assuming petitioner placed his petition in the mail system on the date it was notarized, the petition would still be untimely, as explained in this Order. Furthermore, to the extent that petitioner asserts in his Affidavit that he filed a Motion for Extension of Time in November, prior to filing his habeas petition, that motion did not serve to toll the limitations period because petitioner was informed by the Clerk's Office that he could not file a motion prior to submitting a petition so the motion was not "properly filed." *See Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000) (holding that an application for collateral review is "filed, as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record").

petitioner can establish that the statute of limitations does not apply or should otherwise be tolled. *See Hill v. Braxton,* 277 F.3d 701, 707 (4th Cir.2002) (requiring notice and the opportunity to respond before a *sua sponte* dismissal under § 2244(d)).

■ In his Affidavit, petitioner appears to assert that he is entitled to equitable tolling.[3] In the Fourth Circuit, the one-year statute of limitations for § 2254 petitions is subject to equitable tolling. Yet, the court has cautioned that "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir. 2000). Consequently, "any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id.* Accordingly, it is settled that a petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee,* 339 F.3d 238, 246 (4th Cir. 2003).

Here, petitioner has failed to meet this standard; he has not demonstrated the requisite extraordinary circumstances to warrant equitable tolling of the one-year

statute of limitations. The circumstances on which petitioner relies amount to no more than the routine incidents and circumstances of prison life. Specifically, petitioner alleges that his petition is untimely as a result of his transfers to different correctional facilities. Aff. 2. In this connection he states that on January 8, 2008, he was transferred to the Haynesville Correctional Center from the Nottoway Correctional Center, and that he could not prepare his federal writ until he received his property and legal papers from Nottoway. Aff. 2. He does not disclose when he received these materials. Petitioner adds that he was transferred on July 22, 2008, from Haynesville to the Dillwyn Correctional Center, and again could not work on his habeas petition until he received his property. Aff. 2. Again, he does not state when this occurred. Petitioner also notes that after he completed his petition, officials at Dillwyn denied petitioner access to a notary, and petitioner was required to file an emergency grievance in order to obtain the necessary notary services. Aff. 3. Finally, petitioner notes that his correctional institution was on lockdown for seven days in November of 2008. Aff. 3.

Although the Fourth Circuit has not squarely addressed whether prison transfers warrant equitable tolling, other courts have done so, uniformly and sensibly concluding that routine prison transfers do not warrant equitable tolling.[4] As one court succinctly put it, "[t]ransfers be-

---

3. *Pro se* pleadings are entitled to a generous reading. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (explaining that *pro se* pleadings are held to less stringent standards than formal pleadings drafted by lawyers).

4. *See Dodd v. United States,* 365 F.3d 1273, 1283 (11th Cir.2004) (holding so in the context of a petition filed pursuant to 28 U.S.C. § 2255); *Montenegro v. United States,* 248 F.3d 585, 594 (7th Cir.2001), *overruled on*

other grounds by *Ashley v. United States,* 266 F.3d 671 (7th Cir.2001) (same); *cf. United States v. Fredette,* 191 Fed.Appx. 711, 713 (10th Cir.2006) (finding that petitioner was not entitled to equitable tolling of his § 2255 petition, despite his transfer to as many as six different facilities, because even if petitioner was denied access to legal materials in violation of his constitutional right of access to the courts, he failed to show how the transfers affected his ability to file timely); *Lott v. Mueller,* 304 F.3d 918, 922–25 (9th Cir.2002)

tween prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances." *Warren v. Kelly,* 207 F.Supp.2d 6, 10 (E.D.N.Y.2002).[5] And, this is so because prisoners, who are "familiar with the routine restrictions of prison life[,] must take such matters into account when calculating when to file a federal [habeas] petition." *Atkins v. Harris,* No. C 98–3188MJJ(PR), 1999 WL 13719, at *2 (N.D.Cal. Jan. 7, 1999).[6] Where a petitioner claims that the transfer interfered with law library access, or access to his personal legal papers while in transit, courts consistently hold that such results of prison transfers are not extraordinary for the purposes of equitable tolling.[7]

To be sure, situations may arise where transfers may combine with other circumstances to constitute the extraordinary circumstances necessary to trigger equitable tolling. Yet, this is plainly not such a case. Here, petitioner alleges that he was transferred twice, and as a result, he was temporarily without access to his legal documents and could not work on his federal habeas petition. Petitioner also alleges that his facility was in lockdown for seven days in November, and that his access to a notary was delayed. These factors, both individually and combined, simply do not rise to the level of extraordinary circumstances necessary to invoke equitable tolling. *See Rouse,* 339 F.3d at 246. First, petitioner fails to allege that his transfers were anything other than routine. As a prisoner, petitioner is aware of such re-

(holding that prison transfers may constitute extraordinary circumstances to warrant equitable tolling, but noting that the inquiry is highly fact dependent).

**5.** *See also Lucero v. Suthers,* 16 Fed.Appx. 964, 965 (10th Cir.2001) (unpublished) (noting that prison "transfers have become commonplace"); *Johnson v. Hill,* 224 Fed.Appx. 641, 641 (9th Cir.2007) (finding that petitioner failed to demonstrate that his frequent transfers were an extraordinary circumstance because, despite his transfers, petitioner had sufficient access to legal materials); *United States v. Gambini,* No. Civ. A 99–225, 2002 WL 1767418, at *2 (E.D.La. July 30, 2002) (explaining that "transfers ... are hardly 'rare and exceptional' circumstances that warrant equitable tolling"); *Lawson v. United States,* No. AW–08–189, 2008 WL 4067313, at *2 (D.Md. Aug. 26, 2008) (stating that "lock downs and periods during which a prisoner is separated from his legal papers, without more, do not amount to extraordinary circumstances").

**6.** *See also Dodd,* 365 F.3d at 1283 (holding that petitioner was not entitled to equitable tolling where he had not argued nor even suggested that his transfer from one facility to another was anything but routine practice).

**7.** *See Lucero,* 16 Fed.Appx. at 965 (rejecting a petitioner's request for equitable tolling for his § 2254 petition where the petitioner "merely alleged that his transfer to another state's prison prohibited him from access to the relevant statutes and case law"); *Villa v. Woodford,* 291 Fed.Appx. 835, 836 (9th Cir. 2008) (unpublished) (holding that a temporary loss of access to petitioner's legal papers, especially early on during the limitations period, did not prevent petitioner from filing a timely § 2254 petition, and therefore equitable tolling was inappropriate); *Gambini,* 2002 WL 1767418, at *3 (refusing equitable tolling despite petitioner's allegations that his legal work was lost following a transfer, because petitioner failed to explain why this prevented him from timely filing); *cf. Allen v. Lewis,* 255 F.3d 798, 800–01 (9th Cir.2001) (determining that where petitioner failed to produce evidence that the loss of access to his habeas materials made it impossible for him to file his habeas petition on time, equitable tolling was not appropriate); *United States v. Cicero,* 214 F.3d 199, 205 (D.C.Cir.2000) (deciding that, in the context of a § 2255 petition, equitable tolling was not warranted where petitioner entrusted his legal papers to another inmate who was placed in segregation, thus separating petitioner from his own legal documents).

strictions on prison life, and should be expected to consider such factors when deciding when to file his habeas petition. Furthermore, although petitioner alleges that he was without access to his legal papers for some period of time, he fails to indicate when he received his documents following his transfer, how long he was without these documents, and how exactly his lack of access to these materials impacted his ability to file timely his federal habeas application. Also significant is that petitioner does not allege that he did not have access to the law library at either of the facilities to which he was transferred, but only that he was without his own personal legal documents. Thus, petitioner still had legal resources available to him, even while he waited for delivery of his personal documents.

Additionally, the seven-day period during which petitioner's facility was on lockdown does not rise to the level of extraordinary circumstances. As previously noted, lockdowns are sufficiently routine that a petitioner is expected to be on notice that such a situation could arise, and to account for that possibility when determining when to file his petition. *See Warren,* 207 F.Supp.2d at 10. Additionally, the lockdown was in place for a maximum of seven days, and petitioner presents no facts to indicate how, if at all, these seven days affected his ability to file timely, especially in light of the fact that the instant petition was filed 65 days beyond the limitations period. Even if those seven days were tolled, petitioner's filing would still be untimely.

Finally, petitioner alleges that officials at his institution of confinement denied him access to a notary, which further delayed the filing of his petition. In support of his claim, petitioner attaches an emergency grievance that he filed, stating that he required notary services immediately. Ex. B to Aff. Officials responded that petitioner would have his notary work "taken care of." *Id.* From the dates on the grievance form, it is unclear when petitioner sought access to the notary, as he dated his claim "Dec. 9, 2008" and the response to his claim was dated "11/10/08."[8] Nevertheless, petitioner himself fails to allege how long he was denied access to a notary after he made his initial request for such services, how long he waited for the notary services after he made his request, and how this affected his ability to file timely.

In sum, petitioner has not presented the extraordinary circumstances required to warrant tolling of the limitations period. Accordingly, the Court declines to apply equitable tolling in this case and will dismiss the instant petition as time-barred.

Accordingly, it is hereby

ORDERED that the instant petition for a writ of habeas corpus be and is DISMISSED WITH PREJUDICE as time-barred; and it is further

ORDERED that plaintiff's requests to proceed *in forma pauperis* (Docket ## 2 and 9) be and are DENIED as moot.

---

8. It appears from the dates listed that either petitioner or the responding officer improperly dated the emergency grievance form. If the correct date is December 9, 2008, as petitioner wrote, then the delay of three days between the date he submitted his emergency grievance and the date on which his petition was notarized, December 12, 2008, would be inconsequential for the purposes of equitable tolling. Additionally, if petitioner incorrectly dated his grievance form, either intentionally or unintentionally, and he was not provided with notary services from November 10, 2008, the date on which the responding officer signed his emergency grievance form, until December 12, 2008, that would still account for only 32 of the 65 days.

To appeal, the petitioner must file a written notice of appeal with the Clerk's Office within thirty (30) days of the date of this Order. A written notice of appeal is a short statement stating a desire to appeal this Order and noting the date of the Order petitioner wants to appeal. Petitioner need not explain the grounds for appeal until so directed by the court. Petitioner must also request a certificate of appealability from a circuit justice or judge. *See* 28 U.S.C. § 2253 and Fed. R.App. P. 22(b). For the reasons stated above, this Court expressly declines to issue such a certificate.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to petitioner and to close this civil case.