Homer M. NUTTER, Jr.,
Plaintiff–Appellant,

v.

James D. WHITE, Warden, James H. Evans, Attorney General of the State of Alabama, Defendants–Appellees.

No. 94–6007.

United States Court of Appeals,
Eleventh Circuit.

Dec. 9, 1994.

Barry D. Woodham, Haskell, Slaughter, Young, Johnston, & Gallion, Montgomery, AL, for appellant.

James B. Prude, Asst. Atty. Gen., Office of Atty. Gen., Montgomery, AL, for appellees.

Before CARNES and BARKETT, Circuit Judges, and JOHNSON, Senior Circuit Judge.

JOHNSON, Senior Circuit Judge:

This case arises on appeal following the district court's order denying and dismissing the petition for writ of habeas corpus of petitioner-appellant Homer M. Nutter. For the reasons that follow, we reverse the district court's decision and remand for further proceedings consistent with this opinion.

## I. STATEMENT OF THE CASE

In 1985, Nutter was convicted of murder in the Circuit Court for Russell County, Alabama and sentenced to fifty years' imprisonment. In charging the jury, the trial judge stated:

> Now, you notice that I have used the term reasonable doubt. A reasonable doubt means there is a good reason for it arising, that is, out of the evidence itself. A reasonable doubt has to be *an actual and a substantial doubt* in your mind growing out of the nature of the evidence you have received. You can't have a doubt simply because you want to have one or from any groundless reason. Any doubt that you have must be reasonable and it must arise out of the evidence or the lack of evidence in this case. You can't go outside of the evidence to convict or acquit the defendant. You must take the evidence that is here.

So, in arriving at your verdict, it is up to you to carefully consider all of the evidence. And once you do, entertain doubts only if they are reasonable and grow out of the evidence in this case as I have defined to you.

You may have some way of determining what reasonable doubt is yourself, but the reason why we have the theory of reasonable doubt is to allow 12 people to use their common sense and intelligence to arrive at a decision as human beings. Since we are human beings, we cannot be 100 percent mathematically certain. There is no such thing as that in human affairs, because we do have error built into us. But with the 12 of you we ask that the 12 then look over the evidence, all of the evidence, and then just entertain a doubt that is reasonable as I have tried to define for you.

Once you have determined what the facts are in this case and you know, you are satisfied that certain facts existed, then lean back and ask yourself, maybe just your conscience and to yourself and say, "Is he guilty?" And if you say, "I don't have any reasonable doubt about it," then you should convict. If on the other hand, you think about it and you ask yourself that question and you ask yourself, "Is he guilty of this offense?" and you say, "I doubt that he is," then you should acquit.

(emphasis added). Nutter's conviction was affirmed on direct appeal. Nutter's petition for state post-conviction relief was denied in 1988, and no appeal was taken.

In April 1991, Nutter filed a habeas corpus petition in federal district court, claiming that his jury instruction regarding reasonable doubt was unconstitutional under *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam). In *Cage,* the Court found a jury instruction, which used the phrases "grave uncertainty," "substantial doubt," and "moral certainty" to define reasonable doubt, violated due process

because it allowed the jury to convict on a lower standard of proof than beyond a reasonable doubt.[1] 498 U.S. at 41, 111 S.Ct. at 329–30. After an evidentiary hearing, the federal magistrate judge found that *Cage* announced a new rule of law and, therefore, under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), it could not be given retroactive effect on collateral review. Nutter requested and was granted reconsideration in light of *Sullivan v. Louisiana,* —— U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), which held that on direct review *Cage* violations are not harmless error, but rather require reversal. The magistrate judge concluded that despite *Sullivan, Cage* did not fall within an exception to *Teague.* The district court adopted the magistrate judge's recommendation. On appeal, Nutter seeks review of the district court's determination that the *Cage* rule cannot be retroactively invoked under an exception to *Teague.*

## II. ANALYSIS

■ Our review of a magistrate judge's conclusions of law, as adopted by the district court, is plenary. *Cumbie v. Singletary,* 991 F.2d 715 (11th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 650, 126 L.Ed.2d 608 (1993).

### A. *The Order of Decision*

The State's brief declined to address the retroactivity issue, contending that an intervening Supreme Court decision, *Victor v. Nebraska,* —— U.S. ——, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), rendered it moot. Thus, the State urges us to proceed directly to the merits of Nutter's constitutional claim. We decline to heed this request.

■ Although this Court occasionally reaches the merits of constitutional claims raised in habeas corpus petitions without first addressing retroactivity,[2] it is not a fa-

---

1. The Court had previously recognized that the reasonable doubt standard in criminal proceedings is guaranteed by the Due Process Clause. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

2. *See Burger v. Zant,* 984 F.2d 1129, 1135 (11th Cir.) (proceeding directly to the merits because

claim was clearly baseless), *cert. denied,* —— U.S. ——, 114 S.Ct. 141, 126 L.Ed.2d 104 (1993); *Clisby v. Jones,* 960 F.2d 925, 928 n. 6 (11th Cir.1992) (judicial economy justified disposing of case on merits without reaching retroactivity issues).

vored practice. *See Caspari v. Bohlen,* —— U.S. ——, ——, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994) (where the state raises *Teague,* the courts must address retroactivity before the merits). The Supreme Court "consistently has declined to address unsettled questions regarding the scope of decisions establishing new constitutional doctrine in cases in which it holds those decisions nonretroactive." *Bowen v. United States,* 422 U.S. 916, 920, 95 S.Ct. 2569, 2573, 45 L.Ed.2d 641 (1975). By addressing the retroactivity issue first, courts avoid unnecessarily deciding constitutional questions. *Id.* Therefore, we first decide whether we are barred from applying *Cage* to this case on collateral review.[3]

### B. *Teague Analysis*

■ *Teague* held that a new rule of law will not be applied to cases on collateral review where conviction was final prior to the new rule's announcement. 489 U.S. at 310, 109 S.Ct. at 1075. There are, however, two narrow exceptions to *Teague* 's non-retroactivity rule. The first exception permits retroactive application to new rules that place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Teague,* 489 U.S. at 307, 109 S.Ct. at 1073. The second exception allows retroactive application of new rules that involve procedures that are "implicit in the concept of ordered liberty." *Id.*

■ Although Nutter concedes that *Cage* announced a new rule,[4] he contends that it falls within the second *Teague* 'exception which encompasses rules that are "central to an accurate determination of innocence or guilt." *Teague,* 489 U.S. at 319, 109 S.Ct. at 1080. Under this exception, federal courts may retroactively apply new rules of law on collateral review in cases involving " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Graham v. Collins,* —— U.S. ——, ——, 113 S.Ct. 892, 903, 122 L.Ed.2d 260 (1993). To fall within the exception, the new rule must satisfy a two-pronged test: (1) it must relate to the accuracy of the conviction; and (2) it must alter "our understanding of the 'bedrock procedural elements' essential to the [fundamental] fairness of a proceeding." *Sawyer v. Smith,* 497 U.S. 227, 242, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193 (1990).

■ The *Cage* rule meets the accuracy prong. The reasonable doubt standard guards against conviction of the innocent by ensuring the *systemic* accuracy of the criminal system.[5] *Sullivan,* —— U.S. at ——, 113 S.Ct. at 2083 (a jury verdict of guilt beyond a reasonable doubt is "a 'basic protection' whose precise effects are unmeasurable"). An erroneous reasonable doubt instruction invalidates the jury verdict, making it impossible to assess the accuracy of the conviction because "[t]here is no object, so to speak, upon which harmless error can operate." *Id.* at ——, 113 S.Ct. at 2082.

*Cage* also satisfies the fundamental fairness prong of *Teague* 's second exception. The Supreme Court typically offers the right

---

**3.** A different case, however, might be before us if the issue involved *announcing* a new rule rather than merely *applying* a new rule. *See* James S. Liebman and Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 22A.4, 231–242 (Supp.1993). Our decision today should not be understood as expressing any view regarding the proper order of decision in such cases.

**4.** *See also Walker v. Jones,* 10 F.3d 1569 (11th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2111, 128 L.Ed.2d 671 (1994) (lawyer's pre-*Cage* failure to object to instruction on *Cage* grounds was not ineffective assistance because such jury instructions had not been declared unconstitutional prior to *Cage* ).

**5.** Prior to *Sullivan,* the two circuit courts to address the issue held that *Cage* did not have retroactive effect on collateral review. *Skelton v.*

*Whitley,* 950 F.2d 1037 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 102, 121 L.Ed.2d 61 (1992); *Adams v. Aiken,* 965 F.2d 1306 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2966, 125 L.Ed.2d 666 (1993), *cert. granted on reh'g and judgment vacated,* —— U.S. ——, 114 S.Ct. 1365, 128 L.Ed.2d 42 (1994) (remanding the case to the Fourth Circuit for reconsideration in light of *Sullivan* ). The Fifth Circuit found that *Cage* error constituted a minor dilution in the accuracy of the conviction. *Skelton,* 950 F.2d at 1045 ("Here, the problem is not a complete absence of the reasonable doubt standard ... but rather whether the jury instruction inadvertently diluted the reasonable doubt standard to some degree."). This view of *Cage* does not survive *Sullivan.*

to counsel, announced in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), as the paradigm of a "bedrock procedural element" falling within the second exception. *See, e.g., Mackey v. United States,* 401 U.S. 667, 693–94, 91 S.Ct. 1160, 1180–81, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring). Like *Gideon, Cage* implicates a fundamental guarantee of trial procedure because use of a lower standard of proof frustrates the jury-trial guarantee. *See Sullivan,* —— U.S. at ——, 113 S.Ct. at 2081 (to uphold a conviction on harmless error standard in a case of *Cage* error violates the jury-trial guarantee). Unlike other new rules, an inadequate reasonable doubt instruction cannot be cured by other circumstances at trial.[6] Thus, an improper reasonable doubt instruction undermines the fundamental fairness of *every* trial in which it is used.

*Teague* represents the Supreme Court's efforts to find the equilibrium between finality of judgments and certainty of results. In furtherance of the goals of education and deterrence, which are implicit in the doctrine of finality, *Teague* made new law unavailable on collateral review.[7] The interest in finality, however, must give way where, as in this case, the nature of the constitutional error is such that we have no confidence in outcomes produced by the procedure at issue.

The reasonable doubt standard represents a social calculus between the relative consequences of unjust conviction and incorrect acquittal. *See In re Winship,* 397 U.S. 358, 370–71, 90 S.Ct. 1068, 1075–76, 25 L.Ed.2d 368 (Harlan, J., concurring). *Cage* recognizes that jury instructions implying a lesser standard than reasonable doubt eviscerate this constitutional calculus. As Justice Harlan observed,

[I]n some situations it might be that time and growth in social capacity, as well as judicial perceptions of what we can rightly demand of the adjudicatory process, will properly alter our understanding of the

bedrock procedural elements that must be found to vitiate the fairness of a particular conviction.

*Mackey,* 401 U.S. at 693, 91 S.Ct. at 693. *Cage* commands a new trial procedure to meet a fundamental concern that has long animated our criminal process. Thus, here we confront one of those rare instances where our interest in certainty is so clearly implicated that finality interests must be subordinated.

In sum, together with *Sullivan, Cage* has reshaped our view of the importance of precise reasonable doubt instructions. Prior to *Sullivan,* the Fifth Circuit concluded to the contrary, writing that the second *Teague* exception is limited to "those rules designed to redress constitutional violations that 'so distort the judicial process as to leave one with the impression that there has been no judicial determination at all.'" *Skelton,* 950 F.2d at 1044. *Sullivan* tells us that "no judicial determination" is precisely the consequence of *Cage* error. Accordingly, the district court erred in dismissing Nutter's petition.

### C. *Nutter's Instruction*

■ The circumstances of this case counsel against addressing the merits of Nutter's *Cage* claim. The district court's denial of the petition was limited to the *Teague* issue. Nutter did not brief the merits on appeal.[8] Thus, because we have not received the benefit of a complete briefing on the merits, we limit our consideration to the retroactivity issue.

### III. CONCLUSION

Accordingly, we REVERSE and REMAND to the district court for proceedings consistent with this opinion.

---

**6.** *Cf. Teague,* 489 U.S. at 314–15, 109 S.Ct. at 1077–78 (reasoning that the rule requiring a fair cross-section on the jury venire is not retroactive because not every criminal trial conducted in that manner is *"necessarily* unfair").

**7.** *See* Patrick E. Higgenbotham, *Notes on Teague,* 66 S.Cal.L.Rev. 2433, 2437 (1993) (discussing policies underlying *Teague* ).

**8.** Although the relevance of *Victor* to the merits of Nutter's *Cage* claim was discussed at oral argument, we feel that a more thorough briefing of the issue would be helpful to this Court.