[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10361
Non-Argument Calendar
_____

D.C. Docket Nos. 1:11-cv-21499-DTKH; 9:07-cr-80036-DTKH-1


RICKEY THOMPSON,

                                                              Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

                                                              Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 9, 2015)


Before HULL, JORDAN and JILL PRYOR, Circuit Judges.

PER CURIAM:

Rickey Thompson, a pro se federal prisoner, was convicted of, among other things, three counts of second degree murder, in violation of 18 U.S.C. §§ 1111 and 2. Specifically, a jury found that Thompson, as a Bahamian boat captain, was smuggling drugs and aliens into the United States, and murdered Roselyne Lubin, Alnert Charles, and Nigel Warren by ordering them to jump from a boat into the Atlantic Ocean off the coast of Florida, where they drowned. Thompson is serving a total life sentence.

Thompson appeals the denial of his first 28 U.S.C. § 2255 motion. A certificate of appealability was granted on one issue: whether the district court lacked jurisdiction to try Thompson for second degree murder when the acts at issue occurred within three miles of Florida shores. After review, we affirm.[1]

## I. JURISDICTIONAL PRINCIPLES

Second degree murder is a federal criminal offense if it occurs within the "special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 1111(b). For offenses in Title 18 of the United States Code, the United States's special maritime and territorial jurisdiction includes, inter alia, the "high seas" and "any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular [s]tate." Id. § 7(1). It also includes the United States's "territorial sea." Antiterrorism and Effective Death

---

[1] We review legal issues raised in a § 2255 proceeding de novo and the district court's factual findings for clear error. Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004).

Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 901(a), 110 Stat. 1214, 1317 (1996); see also 18 U.S.C. § 7, historical and statutory notes). [2]

For purposes of federal criminal jurisdiction, the term "high seas" refers to "all waters seaward of the territorial sea baseline." 33 C.F.R. § 2.32(a) (emphasis added). The territorial sea baseline is ordinarily the mean low water line along the United States's coast. Id. § 2.20. The "territorial sea" is "the waters, 12 nautical miles wide, adjacent to the coast of the United States and seaward of the territorial sea baseline." Id. § 2.22(a)(1). In other words, federal criminal jurisdiction begins at the coast's mean low water line and extends out into the sea.

Meanwhile, both Florida and federal law recognize that Florida's coastal boundaries extend three geographical miles into the sea. Specifically, Florida's Constitution sets the state's eastern boundary at the edge of the Gulf Stream or a distance of three geographical miles, whichever is the greater distance. Fla. Const., art. II, § 1.

---

[2]Section 7(1) states in full that "special maritime and territorial jurisdiction of the United States" includes:

> (1) The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, or District or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any" particular State.

18 U.S.C. § 7(1). The AEDPA added that "all the territorial sea of the United States . . . for purposes of Federal criminal jurisdiction is part of the United States, subject to its sovereignty, and is within the special maritime and territorial jurisdiction of the United States for the purposes of title 18, United States Code." Pub. L. No. 104-132, § 901(a), 110 Stat. at 1317.

Similarly, the federal Submerged Lands Act sets the seaward boundaries of each coastal state "as a line three geographical miles distant from its coast line," 43 U.S.C. § 1312, and grants each state title and ownership of the lands, minerals, and other natural resources beneath navigable waters within those three geographical miles, id. § 1311(a).  The Submerged Lands Act also transfers to the states "the right and power to manage, administer, lease, develop, and use" the submerged lands and waters, id. § 1311(a)(2), but it reserves certain rights to the United States, such as the right to use, develop, improve, or control the waters "for the purposes of navigation or flood control or the production of power," id. § 1311(d), and all rights in and powers of regulation and control for the purposes of commerce, navigation, national defense, and international affairs, id. § 1314(a); see also United States v. California, 436 U.S. 32, 40, 98 S. Ct. 1662, 1666 (1978).

In Murray v. Hildreth, the former Fifth Circuit concluded that a murder committed on or alongside a boat in the Atlantic Ocean, within 200 feet of the Florida coast near Dania Beach was committed on the "high seas" because it was committed on the ocean below the low water mark of Florida's coast.  Murray, 61 F.2d 483, 484-85 (5th Cir. 1932) (involving the predecessor statute to 18 U.S.C. § 1111).[3]  Just as Thompson does here, Murray argued that the murder he was

---

[3]This Court adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

4

charged with committing was "within the exclusive jurisdiction of the courts of the state of Florida." Id. at 484. The Fifth Circuit rejected this argument. The Court explained that, although the crime was committed within the State of Florida's three miles of territorial waters, the statutory requirement that the offense be committed "out of the jurisdiction of any particular State" did not apply to high seas crimes, but only to crimes committed "on any other waters," such as rivers, havens, and bays. Id. at 485 (citing United States v. Rodgers, 150 U.S. 249, 266, 14 S. Ct. 109, 117-16 (1893)). The Court concluded that "Congress has taken jurisdiction of crimes committed on the high seas within the three-mile limit . . . ." Id. The Murray Court explicitly left undecided whether the State of Florida had concurrent jurisdiction to also prosecute the defendant. Id.

## II. JURISDICTION OVER THOMPSON'S MURDER CHARGES

Here, the district court had subject matter jurisdiction to try Thompson for the three murders.[4] In the § 2255 proceeding, the district court found, based on the parties' agreement, that the murders occurred within 200 yards of Florida's shore, and neither party challenges that finding on appeal. Importantly, the trial record supports this factual finding and shows that, when Lubin and Charles drowned in August 2006, the boat was at least 50 to 100 yards from the Florida shore, and

---

[4]Although Thompson did not raise this jurisdictional issue in his direct criminal appeal, see United States v. Thompson, 363 F. App'x 737 (11th Cir. 2010), it is not subject to waiver or procedural default. See Howard v. United States, 374 F.3d 1068, 1071 (11th Cir. 2004).

when Warren drowned in December 2006, the boat was approximately one length of the courtroom away from the Florida shore, both times in water that was over the victims' heads.

Given that the murders occurred between 50 and 200 yards of Florida's coastline, the murders occurred on the "high seas" and within the "territorial sea" of the United States, as those terms are defined by federal law. See 18 U.S.C. § 7(1); 33 C.F.R. §§ 2.22(a)(1)(ii), 2.32(a); Murray, 61 F.2d at 484-85. Thus, the murders occurred within the United States's special maritime and territorial jurisdiction and were federal criminal offenses over which the district court had subject matter jurisdiction. See 18 U.S.C. §§ 7(1) & 1111(b), 3231.[5]

Thompson argues that because he committed his crimes within three miles of shore, Florida has exclusive jurisdiction to prosecute him. Specifically, he contends that 18 U.S.C. § 7(1) bars his federal prosecution because it limits the jurisdiction of the United States to only those waters that are "out of the jurisdiction of any particular State." See id. § 7(1). This argument is foreclosed by Murray, which concluded that this particular phrase refers only to "any other waters," and does not apply to the "high seas." See Murray, 61 F.2d at 485; see also Chambers v. Thompson, 150 F.3d 1324, 1326 (11th Cir. 1998) (explaining that we are bound by a prior panel's holding unless that holding is overruled or

---

[5]We need not, and do not, address whether the State of Florida had concurrent jurisdiction to prosecute Thompson for violations of its own laws.

undermined to the point of abrogation by the Supreme Court or this Court sitting en banc).  Although Murray interpreted an earlier version of 18 U.S.C. § 7 (then codified as 18 U.S.C. § 451), the relevant language of the provision has not materially changed, see Murray, 61 F.3d at 484-85, and Murray's interpretation of the phrase "high seas" is consistent with the current federal regulation defining that term, see 33 C.F.R. § 2.32(a).

Thompson argues that the Submerged Lands Act conferred exclusive criminal jurisdiction on Florida.  Nothing in the language of the Submerged Lands Act suggests that, notwithstanding 18 U.S.C. § 7, exclusive criminal jurisdiction over all waters within the states' boundaries is conferred on the states.  Indeed, the Submerged Lands Act does not refer to either criminal jurisdiction or criminal prosecutions at all.  Further, Thompson cites no authority indicating that the Submerged Lands Act was intended to transfer to the states exclusive criminal jurisdiction over waters falling within 18 U.S.C. § 7(1)'s definition of the special maritime and territorial jurisdiction of the United States.

In sum, the trial court had subject matter jurisdiction to try Thompson on the second degree murders counts under 18 U.S.C. §§ 7 and 1111(b).  Accordingly, the district court properly denied Thompson's § 2255 motion with respect to these convictions.

**AFFIRMED.**